2012 Ark. 40

**ARKANSAS DEPARTMENT OF HU-MAN SERVICES, Division of Developmental Disabilities Services, Appellant**

v.

**CIVITAN CENTER, INC., Appellee.**

**No. 11–574.**

Supreme Court of Arkansas.

Feb. 2, 2012.

Breck G. Hopkins, Little Rock, for appellant.

Stephen Witsell Jones and Deborah Ann Linton, Little Rock, for appellee.

COURTNEY HUDSON GOODSON, Justice.

Appellant Division of Developmental Disabilities Services of the Arkansas Department of Human Services (DDS) appeals an order of the Saline County Circuit Court granting a motion for summary judgment filed by appellee Civitan Center, Inc. and denying a motion for summary judgment filed by DDS. For reversal, DDS argues that the circuit court erred in granting Civitan's request for declaratory relief, in finding a due-process violation, and in ruling that DDS violated the Administrative Procedure Act by denying Civitan a hearing. We reverse and dismiss.

Pursuant to Arkansas statutes, DDS administers community services benefitting individuals with mental retardation and developmental disabilities, and DDS licenses providers of these services. In 2000, DDS licensed Civitan to operate an adult developmental day-treatment clinical-services (DDTCS) center in Benton. Civitan also offered DDTCS in Bryant. In 2004, DDS began implementing a policy to define when an area was unserved or underserved in order to clarify the process for expansion of services. On October 17, 2004, DDS drafted Policy 1089, which DDS later promulgated. This policy established the criteria for the expansion of DDS services, including the following provisions:

(a) Underserved: Requested services are available within one hour of the consumer's home but there are unduplicated service requests amounting to at least 5% of the total number of people receiving that service within that county, or 5% of the total number of people receiving that service in that particular county have indicated they are unhappy with the manner in which their services are provided and want to choose a service provider other than those existing in the count [sic]. Any combination of the two categories described above reaching at least the 5% threshold will also cause an area to be deemed underserved.

(b) Existing Provider: A DDS licensed entity that is authorized to provide a service in a particular county by having it included in its contract as of 7/1/03 will be considered an existing provider.

(c) DDS may initiate the expansion of the number of service providers in a specific county if it is identified as underserved based upon the number of existing providers and their capacity in relationship to documented service requests. In the event that an area is determined to be underserved, or if services cannot be accessed through providers active within a county, DDS will issue an RFP [Request For Proposal] soliciting entities to provide services in that county.

Before 2005, Friendship Community Care, Inc. (Friendship) did not provide DDTCS and did not have a site in Saline County; however, Friendship served as a Medicaid waiver provider there. Friendship employed individuals working as special-education teachers and aides in the Bryant School District and had relationships with many potential DDTCS clients from Bryant.

Pursuant to Arkansas Code Annotated section 20–48–105 (Repl.2001), which establishes the requirements for the expansion of services, and DDS Policy 1089, DDS notified community providers, including Civitan, on May 3, 2005, that it listed Saline County as underserved for DDTCS. DDS invited licensed providers to add services and gave licensed providers thirty days to state their intent to expand. On May 18, 2005, Civitan informed DDS that it served as an existing provider of DDTCS and was qualified to serve Saline County. Pursuant to the Freedom of Information Act (FOIA), Civitan requested documents related to DDS's determination that Saline County was underserved in DDTCS. Civitan also requested a hearing on DDS's May 3 determination that Saline County was underserved.

In a letter dated May 25, 2005, DDS produced documentation showing that more than five percent of the recipients informed DDS that they were unhappy with the manner in which their services were provided and wanted "to choose a new provider—one that [did] not presently serve Saline County." Civitan subsequently responded to DDS by requesting that DDS grant Civitan a hearing prior to making any finding that existing service providers were not qualified to extend their services before licensing new service providers in the area. Civitan also reiterated its desire to meet any unmet needs of persons with developmental disabilities in Saline County and reasserted its FOIA request for copies of documents related to DDS's May 3 determination. DDS informed Civitan that it would take its request for a hearing under advisement and asked Civitan to cite the applicable law for its request.

Civitan informed DDS, by a letter dated June 6, 2005, that its calculation of five percent dissatisfaction was incorrect be-

cause that figure was based on the number of DDTCS recipients that Civitan served instead of the total number for Saline County. Civitan again requested a hearing from DDS of the May 3 determination and restated its willingness to resolve any recipient dissatisfaction.

On June 9, 2005, DDS notified Civitan by letter that its original calculation of the five percent figure in its May 3 determination was incorrect and withdrew its determination of underserved status. However, in that same letter, DDS issued a second determination that, based upon subsequent reports, Saline County indeed was underserved. DDS then notified Civitan and other community providers that DDS was promulgating a new Policy 1089. In response, Civitan repeated its request for a hearing in order to challenge the existing Policy 1089 and the proposed Policy 1089. In a letter dated July 8, 2005, DDS requested that Civitan state the adverse action as the basis for that request and stated that the total number of DDTCS recipients in Saline County was eighty-five and that DDS had "6 unduplicated service requests or statements of dissatisfaction with regard to Saline County adult services."

In July 2005, DDS licensed Friendship to provide DDTCS in Saline County. By August 1, 2005, six of Civitan's clients allegedly withdrew to receive services at Friendship. Shortly thereafter, Civitan notified DDS that it would file a preliminary injunction. Civitan then filed a complaint and a request for a preliminary injunction in Saline County Circuit Court. On August 2, 2005, the circuit court held a hearing on the preliminary injunction. The dispute focused on whether DDS applied the correct law in determining that Saline County was underserved. The circuit court issued an order granting Civitan's request for a preliminary injunction, ruling that section 20–48–105 governed the

extension and expansion of services for community-based providers, and the court issued a preliminary injunction that prohibited Friendship from taking any new clients in Saline County. DDS then performed an analysis and arrived at the same conclusion that Saline County was underserved. On October 18, 2005, by letter order, the circuit court reviewed DDS's analysis, determined that DDS complied with section 20–48–105 when it approved Friendship to open a disabilities services site in Benton, and dissolved the injunction. Civitan did not appeal the circuit court's order.

On September 20, 2006, Civitan filed its third amended complaint against DDS, its director, and Friendship. In its complaint, Civitan sought (1) a permanent injunction prohibiting Friendship from accepting any additional clients until it had received a valid license in Saline County; (2) a permanent injunction prohibiting DDS from treating Friendship as a licensed provider in Saline County; from treating Friendship as an existing provider in Saline County; and from paying further government funds to Friendship for providing adult DDTCS in Saline County; (3) a permanent injunction prohibiting Friendship from further solicitation of Civitan's clients; (4) a ruling ordering Friendship to repay all government funds to DDS that Friendship received for providing adult DDTCS in Saline County; and (5) a declaratory judgment stating that DDS may not lawfully license a new provider in Saline County, pursuant to the proposed Policy 1089, until the policy had been properly promulgated and published as required by Arkansas Code Annotated section 25–15–203 (Repl.2002).

DDS answered and filed a motion for summary judgment. In its motion for summary judgment, DDS argued, among other things, that Civitan was not deprived

of a property interest and could not claim a procedural due-process violation; that Civitan had no right to a hearing, pursuant to the Administrative Procedure Act; and that the case was nonjusticiable because Civitan was solely seeking declaratory relief, and the litigation would have no practical effect. On June 4, 2010, Civitan filed its motion for summary judgment, seeking declaratory judgment, findings on allegations of violations of due process, and attorney's fees and costs. On November 24, 2010, by a joint order of dismissal, the circuit court dismissed Civitan's and Friendship's claims against each other.

Subsequently, the circuit court held a hearing on the motions for summary judgment. After hearing oral argument, the court granted Civitan's motion for summary judgment and denied DDS's motion for summary judgment. On February 16, 2011, the court entered an order ruling that DDS failed to comply with its own procedures and state law; that DDS denied Civitan due process; and that Civitan was denied a hearing in violation of the Administrative Procedure Act. From this order, DDS brings its appeal.

On appeal, DDS argues that the circuit court erred in granting Civitan's motion for summary judgment. DDS seeks appellate review of three questions of law: (1) whether declaratory relief was justiciable if Civitan no longer sought any "tangible relief" from the circuit court; (2) whether Civitan was entitled to procedural due process when DDS declared its service area "underserved" and allowed a competitor to enter its service area without a hearing; and (3) whether DDS violated the Administrative Procedure Act in failing to provide Civitan with a hearing on the "underserved" declaration.

The law is well settled regarding the standard of review used by this court in reviewing a grant of summary judgment. *Crockett v. C.A.G. Invs., Inc.*, 2011

Ark. 208, 381 S.W.3d 793. A trial court will grant summary judgment only when it is apparent that no genuine issues of material fact exist requiring litigation and that the moving party is entitled to judgment as a matter of law. *Id.* On appeal, this court determines if summary judgment was appropriate based on whether the evidentiary items presented by the moving party leave a material question of fact unanswered. *Bryan v. City of Cotter*, 2009 Ark. 172, 303 S.W.3d 64. Summary judgment is also appropriate when the trial court finds that the allegations, taken as true, fail to state a cause of action. *Cottrell v. Cottrell*, 332 Ark. 352, 965 S.W.2d 129 (1998). We view the evidence in a light most favorable to the party against whom the motion was filed, resolving all doubts and inferences against the moving party. *Harrisburg Sch. Dist. No. 6 v. Neal*, 2011 Ark. 233, 381 S.W.3d 811.

For the first point on appeal, DDS argues that the circuit court improperly rendered declaratory judgments. DDS contends that Civitan moved for summary judgment and sought only declaratory relief, requesting the court to make a ruling upon the applicability of section 20–48–105 and that DDS's conduct did not comply with the statute. DDS asserts that a justiciable controversy no longer existed because Civitan no longer sought an administrative hearing on the issue, did not seek any compensatory damages, and did not seek injunctive relief.

In response, Civitan argues that its claim for declaratory judgment is a justiciable controversy. Civitan maintains that, in accordance with Arkansas Code Annotated section 25–15–207 (Repl.2002), it brought the present declaratory-judgment action because DDS's application of section 20–48–105 allegedly injured its business. Civitan states that it requested declaratory relief in the form of findings

that section 20–48–105 was applicable to DDS's conduct that allegedly did not comply with the statute. Civitan asserts that "[t]his is not a case requesting declaratory judgment because of anticipated future harm but a case in which harm actually occurred."

 A declaratory-judgment proceeding is reviewed in the same manner as any other judgment, and if there is any substantial evidence to support the finding upon which the judgment is based, it will be affirmed. *Commercial Printing Co. v. Rush*, 261 Ark. 468, 549 S.W.2d 790 (1977). In determining whether there is any substantial evidence to support the circuit court's finding, we must view the record in the light most favorable to the appellee. *Id.* (citing *Power v. Howard*, 253 Ark. 1052, 490 S.W.2d 435 (1973)). The presumptions on appeal are all in favor of the validity of the judgment of the trial court. *Id.* (citing *Woodman of Union of Am. v. Henderson*, 186 Ark. 524, 54 S.W.2d 290 (1932)).

 Declaratory judgments are used to determine the rights and liabilities of respective parties. *Stilley v. James*, 345 Ark. 362, 48 S.W.3d 521 (2001). Our statute on the right to a declaratory judgment states:

Any person interested under a deed, will, written contract, or other writings constituting a contract or whose rights, status, or other legal relations are affected by a statute, municipal ordinance, contract, or franchise may have determined any question of construction or validity arising under the instrument, statute, ordinance, contract, or franchise and obtain a declaration of rights, status, or other legal relations thereunder.

Ark.Code Ann. § 16–111–104 (Repl.2006). The purpose of the declaratory-judgment statutory scheme "is to settle and to afford relief from uncertainty and insecurity with respect to rights, status, and other legal relations." Ark.Code Ann. § 16–111–102(b) (Repl.2006).

 ₉While our declaratory-judgment statute recognizes a party's right to a declaratory judgment, a justiciable controversy is required. *Neely v. McCastlain*, 2009 Ark. 189, 306 S.W.3d 424. We have observed that, in order to obtain declaratory relief, the requisite precedent facts or conditions generally held to be required include:

(1) [A] justiciable controversy; that is to say, a controversy in which a claim of right is asserted against one who has an interest in contesting it; (2) the controversy must be between persons whose interests are adverse; (3) the party seeking declaratory relief must have a legal interest in the controversy; in other words, a legally protectable interest; and (4) the issue involved in the controversy must be ripe for judicial determination.

*MacSteel Div. of Quanex v. Ark. Okla. Gas Corp.*, 363 Ark. 22, 35, 210 S.W.3d 878, 886 (2005) (citing *Andres v. First Ark. Dev. Fin. Corp.*, 230 Ark. 594, 606, 324 S.W.2d 97, 104 (1959)). As we stated in *Nelson v. Ark. Rural Med. Practice Loan & Scholarship Bd.*, 2011 Ark. 491, 385 S.W.3d 762 (citing *Cummings v. City of Fayetteville*, 294 Ark. 151, 154–55, 741 S.W.2d 638, 639–40 (1987)):

The Declaratory Judgment Statute is applicable only where there is a present actual controversy, and all interested persons are made parties, and only where justiciable issues are presented. It does not undertake to decide the legal effect of laws upon a state of facts which is future, contingent or uncertain. A declaratory judgment will not be granted unless the danger or dilemma of the plaintiff is present, not contingent on the happening of hypothetical future events; the prejudice to his position must be

actual and genuine and not merely possible, speculative, contingent, or remote.

▪ Further, we have held that a case becomes moot when any judgment rendered would have no practical legal effect upon a then-existing legal controversy. *Neely, supra* (citing *Shipp v. Franklin,* 370 Ark. 262, 258 S.W.3d 744 (2007)). In other words, a moot case presents no justiciable issue for determination by the court. *Id.*

Turning to the present case, Civitan alleged that DDS did not comply with the procedural provisions of section 20–48–105, as it existed in 2005, for the expansion of DDTCS in Saline County. In its motion for summary judgment, Civitan requested the following:

1. That, pursuant to [section 25–15–207], Civitan be granted declaratory judgment stating that DDS may not lawfully license a new provider in a county pursuant to Proposed DDS Policy 1089 until it has been properly promulgated and published as required by [section 25–15–203].

2. A finding that Civitan's right to due process was violated by DDS in the following manners:

. . . .

3. That the court grant Civitan reasonable costs and attorney fees pursuant to 42 U.S.C. § 1988 and Ark.Code Ann. § 16–123–105, and for all other relief to which it may be entitled.

▪ Here, in paragraph one of its motion for summary judgment, Civitan made a request for declaratory relief regarding DDS's policy, but its request does not present a justiciable issue. Civitan does not challenge the validity or applicability of section 20–48–105. Rather, Civitan improperly sought to declare that DDS re-

frain from licensing an anonymous new provider in an unknown county pursuant to a policy that had not yet been promulgated. In other words, Civitan based its request for declaratory relief upon hypothetical future events against an unknown party-provider in an unnamed county. Civitan sought a legal, advisory opinion instead of a resolution of a present, actual controversy. This request does not comport with our declaratory-judgment statute and precedent.[1]

Further, we note that the gravamen of Civitan's third amended complaint centered on Friendship's actions toward Civitan. However, by a joint order of dismissal, the circuit court dismissed Civitan's and Friendship's claims against each other. Moreover, the circuit court initially issued a preliminary injunction against DDS, and DDS subsequently reviewed the extension of Friendship's service based on section 20–48–105. After filing a motion to dissolve the preliminary injunction, the court dissolved the injunction and ruled that DDS had complied with the statute. Civitan never appealed from that order. *See* Ark. R.App. P.–Civil 2(a)(6) (2011).

Because Civitan failed to present a justiciable controversy, declaratory judgment in Civitan's favor was not proper. In this regard, the requested declaratory relief regarding any alleged due-process violations, which were based upon the lack of a hearing, is moot. *Neely, supra.* For these reasons, we decline to reach the merits of appellant's remaining arguments. Thus, we hold that, as a matter of law, the circuit court erred in granting Civitan's motion for summary judgment. Accordingly, we reverse the circuit court's grant of summary judgment and dismiss, as no

---

1. To the extent that Civitan argues that its request for attorney's fees and costs presents a justiciable controversy, we conclude that, under the circumstances of this case, Civi-
tan's requests for attorney's fees spent in past actions in a moot case does not create a justiciable controversy.

justiciable issue was presented to the circuit court and was therefore moot.

Reversed and dismissed.