RHONDA K. WOOD, Associate Justice
Appellants, which include Arkansas Department of Finance and Administration (DFA), Arkansas Alcoholic Beverage Control Division (ABC), and Arkansas Medical Marijuana Commission (MMC),[1] appeal the circuit court's preliminary injunction and declaratory judgment. At issue is the MMC's process that resulted in a decision awarding the top five scoring applicants, including Natural State Wellness Enterprises, Delta Medical Cannabis Company, Bold Team, LLC, and Osage Creek Cultivation, medical-marijuana-cultivation-facility licenses. Appellee[2] Naturalis Health, LLC (Naturalis), is one of the applicants that did not receive a score sufficient to obtain one of the initial five *904 licenses. We reverse and dismiss the appeal because the circuit court lacked subject-matter jurisdiction.
I. Factual and Procedural Background
In 2016, the people of Arkansas amended the Arkansas Constitution to legalize medical marijuana. Ark. Const. amend. 98. Amendment 98 created the MMC[3] "to determine the qualifications for receiving a license to operate a dispensary or a license to operate a cultivation facility and the awarding of licenses." Id. § 19(a)(1). Pursuant to this authority, the MMC promulgated "Rules and Regulations Governing the Application For, Issuance, and Renewal of Licenses for Medical Marijuana Cultivation Facilities and Dispensaries in Arkansas" (MMC Rules).
The MMC reviewed and ranked the applications[4] for cultivation-facility licenses pursuant to the criteria for merit selection contained in the MMC Rules. In February 2018, the MMC named the top five applicants to whom it would award licenses after each applicant paid a $100,000 licensing fee and posted a $500,000 performance bond.[5] Naturalis ranked thirty-eighth out of eighty-two applicants.
On March 13, 2018, Naturalis filed a "Verified Complaint to Appeal Agency Decision, for Temporary Restraining Order, Preliminary and Permanent Injunction and Declaratory Judgment" in the circuit court against DFA, ABC, and the MMC. On March 14, 2018, the circuit court entered a temporary restraining order. On March 16, 2018, the circuit court conducted an evidentiary hearing on the preliminary injunction. On March 21, 2018, the circuit court entered an order granting the preliminary injunction and a declaratory judgment. Naturalis had asserted that the MMC carried out the application process in a flawed, biased, and arbitrary and capricious manner, and that the commissioners failed to uniformly apply their rules when scoring the applications. The circuit court went further and concluded that the MMC's licensing process and decisions violated Amendment 98 to the Arkansas Constitution, were ultra vires , violated due process of law, resulted from improper procedure, and were arbitrary and capricious. It also declared the MMC's licensing decisions null and void, and it enjoined the MMC from issuing the cultivation-facility licenses.
After the circuit court entered its order, successful and unsuccessful applicants filed motions to intervene,[6] each seeking an opportunity to be heard in the matter.[7] On April 2, 2018, the circuit court entered a "Nunc Pro Tunc Order," again granting the preliminary injunction and declaratory judgment. The circuit court granted the motions to intervene. On April 11, 2018, the circuit court entered a "Memorandum *905 Omnibus Order" denying the appellants/intervenors' motion to vacate the preliminary injunction on grounds of "law of the case." The court stated that because it had already made its decision, it was prohibited from reconsidering it and the parties were bound by it. Appellants appealed.
II. Analysis
A. Finality
We must first determine whether there is an appealable, final order. See Henson v. Cradduck , 2017 Ark. 317, 530 S.W.3d 847. The circuit court's April 11, 2018 memorandum order stated that because it had remanded to the agency, "it is not a final appealable order." First, it is for this court to make that determination, and second, the circuit court is wrong. In some instances, a remand to an agency would preclude us from hearing the appeal for lack of a final order. See Floyd v. Ark. State Bd. of Pharm. , 248 Ark. 459, 451 S.W.2d 874 (1970). An order to remand is not final and appealable if it directs the agency to complete a step which is a predicate to the circuit court reaching its ultimate decision. When this occurs, the circuit court's order contemplates the agency completing the task and the case returning to it for a final decision. See, e.g. , Floyd , 248 Ark. 459, 451 S.W.2d 874 (dismissing appeal because the circuit court's order remanded to the Board to correct its order); Ark. Ins. Dep't v. Henley , 2016 Ark. App. 60, 481 S.W.3d 467 (dismissing appeal because the circuit court remanded for further proceedings); Ark. Dep't of Human Servs. v. J.N. , 96 Ark. App 319, 241 S.W.3d 293 (2006) (circuit court remanding for an in-person hearing to be scheduled at DHS's earliest possible convenience); Hargrett v. Dir., Emp't Sec. Dep't , 44 Ark. App. 111, 866 S.W.2d 432 (1993) (per curiam) (dismissing appeal because the circuit court remanded for the Agency to "issue a determination"); Baldor Elec. Co. v. Jones , 29 Ark. App. 80, 777 S.W.2d 586 (1989) (denying rehearing, 29 Ark. App. 80, 777 S.W.2d 586 (1989) ) (dismissing appeal because the circuit court remanded for the taking of additional evidence).
Here, the circuit court's order is final. It nullified the MMC's decision and remanded to restart the selection process. The circuit court had ruled on the merits. Therefore, we find that the order is a final disposition of the case for purposes of an appeal.
Appellees also argue that our review is limited to the injunctive relief and that we cannot consider the merits because this is an interlocutory appeal under Arkansas Rule of Appellate Procedure-Civil 2(a)(6). Again, we disagree. "For an order to be final and appealable, it must dismiss the parties from the court, discharge them from the action, or conclude their rights to the subject matter in controversy." Robinson v. Villines , 2012 Ark. 211, at 2-3, 2012 WL 1739140. In contrast, an order that contemplates further action by a party or the court is not a final, appealable order. Id. at 3. Here, the circuit court's order is final, and therefore appealable, because it vacated the selection of licensees and enjoined the MMC from issuing the cultivation licenses to applicants it had chosen. The circuit court considered it sufficiently final that it erroneously applied the "law of the case doctrine."[8] The court's decision concluded the lawsuit's controversy, and the appellants appealed from a final, appealable order.[9]
*906 B. Subject-Matter Jurisdiction
Next, we must address subject-matter jurisdiction. Subject-matter jurisdiction is a court's authority to hear a particular type of case. Fatpipe, Inc. v. State , 2012 Ark. 248, 410 S.W.3d 574. It cannot be waived, can be questioned for the first time on appeal, and can be raised by this court sua sponte. Terry v. Lock , 343 Ark. 452, 37 S.W.3d 202 (2001). Subject-matter jurisdiction is determined from the pleadings and not proof. Id. Where the issue of subject-matter jurisdiction requires interpretation of a statute or constitutional provision, our review is de novo. Tripcony v. Ark. Sch. for the Deaf , 2012 Ark. 188, 403 S.W.3d 559.
Our constitution divides our state government into three branches and states that no branch "shall exercise any power belonging to either of the others." Ark. Const. art. 4, § 2. This is foundational to our government. The judicial branch must not abdicate this by reviewing the day-to-day actions of the executive branch. See Ark. Livestock & Poultry Comm'n v. House , 276 Ark. 326, 634 S.W.2d 388 (1982). The Administrative Procedure Act (APA) subjects limited agency decisions to circuit court review. See Tripcony , 2012 Ark. 188, at 6-7, 403 S.W.3d at 561-62. In Tripcony we explained that the courts do not generally have jurisdiction to examine administrative decisions of state agencies. "[I]t is only with respect to its judicial functions, which are basically adjudicatory or quasi-judicial in nature, that the APA purports to subject agency decisions to judicial review." Id. ; see also Sikes v. Gen. Publ'g Co., Inc. , 264 Ark. 1, 568 S.W.2d 33 (1978) (holding that the Board's decision was administrative and not an adjudication because the Board heard no testimony, made no findings of facts, did not serve the parties with a copy of the decision, and certified no record of any proceeding). Because we conclude that the circuit court did not have subject-matter jurisdiction, we must reverse and dismiss.
Based on the complaints, we must consider whether the circuit court had subject-matter jurisdiction under section 212 or section 207 of the APA. Ark. Code Ann. § 207, 212 (Repl. 2014). Section 212 provides circuit courts with jurisdiction to review agency decisions in "cases of adjudication." Ark. Code Ann. § 25-15-212(a). "Adjudication" is defined as the "agency process for the formulation of an order." Id. § 25-15-202(1)(A). An "order" is defined as "the final disposition of an agency in any matter other than rule making, including licensing and rate making, in which the agency is required by law to make its determination after notice and hearing." Id. § 25-15-202(6). If the agency has not conducted an adjudication, then there is no reviewable agency action under section 212. Fatpipe , 2012 Ark. 248, 410 S.W.3d 574.
Appellees cannot identify anything that occurred at the agency level that was an adjudication as defined by statute. Neither can we. The legislature identified quasi-judicial decisions involving "adjudications" as appropriate for judicial review. The MMC's decision simply was not quasi-judicial. Therefore, we find that the circuit court did not have subject-matter jurisdiction over the action disputing MMC's decision to grant the five identified licenses under section 212 of the APA.
Section 207 also fails to provide subject-matter jurisdiction for the controversy at *907 issue. It reads, "[T]he validity or applicability of a rule may be determined in an action for declaratory judgment if it is alleged that the rule, or its threatened application, injures or threatens to injure the plaintiff in his or her person, business, or property." Thus, the plain language of section 207 confers subject-matter jurisdiction on a circuit court to resolve either whether a rule is valid or whether a rule is applicable, or both. Appellees did not plead the invalidity of an MMC rule. Rather, the appellees' complaints alleged that the MMC violated its rules and procedures during the application process and asked the circuit court to invalidate the results.
To determine whether the appellees sought a declaration as to a rule's "applicability," we must take a closer look at the meaning of "applicability" in the context of section 207. The Oxford English Dictionary defines "applicability" as "[t]he quality of being applicable; capable of being fitly applied; pertinence." Applicability , Compact Oxford English Dictionary 64 (2d ed. 1987). Black's Law Dictionary defines "applicable" as it relates to a rule as "affecting or relating to a particular person, group, or situation; having direct relevance." Applicable, Black's Law Dictionary (10th ed. 2014). Thus, the question of whether a rule is "applicable" asks whether that rule may be applied to a person or factual situation or whether it is inappropriate or irrelevant to the person or situation.
The applicability of a rule is different from the application of a rule. Black's Law Dictionary defines "application" as "the process by which a decision-maker categorizes the legal facts at issue and hence ascertains the rule of law that is to govern them." Application, Black's Law Dictionary (10th ed. 2014). Consequently, an inquiry into the "application" of a rule would ask how the rule should be applied given a particular set of facts or circumstances. Therefore, examining a rule's "applicability" is not the same as examining its "application." We find that section 207 is limited to declarations concerning the rule-that the rule is either null and void, in the case of a validity challenge, or whether the rule should be applied to a particular person or situation, in the case of an applicability challenge.
This interpretation of Rule 207 is consistent with the purpose and intent of the APA, which is to allow circuit courts to review judicial or quasi-judicial decisions of state agencies after notice and a hearing. A broad reading of applicability, as to permit circuit courts to determine whether the agency complied with the rules, would largely eliminate the notice and hearing requirements of the APA and would swallow section 212 entirely.
The appellees' complaints do not challenge the "applicability" of any rule as contemplated by section 207. Nor do they seek a declaration regarding whether the rules should have been applied. Rather, the complaints seek a declaration that the "application" of the MMC's rules was improper, unfair, and arbitrary as to them and others during the selection process. As such, the circuit court did not have subject-matter jurisdiction over the action under section 207.
Finally, we decline to address appellees' arguments under MMC Rule 19. The rule states that "if the commission denies an application for a cultivation license, the commission's decision may be appealed to the circuit court of the county in which the cultivation facility is situated or the Pulaski County Circuit Court. Appeals shall be governed by the terms of the Arkansas Administrative Procedure Act, § 25-15-201, et seq." However, the arguments concerning the denial of the license were not *908 ripe for the circuit court to hear. Because the appellees have not been issued denial letters subsequent to an adjudication, the issue was not ripe; therefore, we reverse. We do not address whether Rule 19 conveyed subject-matter jurisdiction to the circuit court.
In sum, we conclude that the circuit court lacked subject-matter jurisdiction. Because the circuit court lacked jurisdiction over this matter, this court must reverse and dismiss both the appeal and the cross-appeal.
Reversed and dismissed on direct appeal and on cross-appeal.
Special Justice Emily White joins.
Kemp, C.J., concurs.
Hart, J., not participating.

Appellants/intervenors are Natural State Wellness Enterprises, Delta Medical Cannabis Company, Bold Team, LLC, and Osage Creek Cultivation. We collectively refer to the appellants and appellants/intervenors as "appellants".

Appellees/intervenors are Arkansas Medicinal Source, LLC, Clear Creek Medical, Inc., Natural State Agronomics, Inc., River Valley Production, LLC, Acanza Health Group, LLC, Carpenter Farms Medical Groups, LLC, Mildred Griggs, and Delta Cannabinoid Corporation. These entities also scored lower than the top five, which resulted in none of them being selected to receive one of the initial five licenses. We use the term "appellees" to include of all appellees.

The MMC is organized within the DFA.

Ninety-five applications were submitted to the MMC, but only eighty-two made it through the initial screening process and were ranked by the MMC.

Under Amendment 98, MMC must issue at least four but no more than eight medical marijuana cultivation-facility licenses.

These are the entities identified as appellants/intervenors in footnote 1 supra and appellees/intervenors in footnote 2 supra.

The following parties intervened as plaintiffs: Arkansas Medicinal Source, LLC; Clear Creek Medical, LLC; River Valley Production, LLC d/b/a River Valley Relief Cultivation; Natural State Agronomics, Inc.; Carpenter Farms Medical Group, LLC; Acanza Health Group, LLC; Mildred Griggs and Delta Cannabinoid Corporation. The following intervened as defendants: Natural State Wellness Enterprises, LLC; Bold Team, LLC; Delta Medical Cannabis Company, LLC; and Osage Creek Cultivation, LLC.

Application of law of the case doctrine is not an issue on appeal. A good discussion of the doctrine can be found in Cannady v. St. Vincent Infirmary Medical Center , 2018 Ark. 35, 537 S.W.3d 259.

Additionally, the appellants' notice of appeal stated that they were appealing from a final order and were not limiting it to an interlocutory appeal.