Cite as 2022 Ark. 140

# SUPREME COURT OF ARKANSAS

**No.** CV-21-505

| | |
|---|---|
| ARKANSAS DEPARTMENT OF FINANCE AND ADMINISTRATION; ARKANSAS ALCOHOLIC BEVERAGE CONTROL DIVISION; AND ARKANSAS MEDICAL MARIJUANA COMMISSION<br><br>APPELLANTS<br><br>V.<br><br>2600 HOLDINGS, LLC, D/B/A SOUTHERN ROOTS CULTIVATION<br>APPELLEE | **Opinion Delivered:** June 16, 2022<br><br>APPEAL FROM THE PULASKI COUNTY CIRCUIT COURT [NO. 60CV-21-582]<br><br>HONORABLE HERBERT T. WRIGHT, JR., JUDGE<br><br><u>AFFIRMED IN PART; DISMISSED IN PART AND REMANDED</u>. |

**BARBARA W. WEBB, Justice**

The Arkansas Department of Finance and Administration (ADFA), the Arkansas Alcoholic Beverage Control Division (ABC), and the Arkansas Medical Marijuana Commission (MMC) have filed this interlocutory appeal from the Pulaski County Circuit Court's denial of its motion to dismiss on the basis of sovereign immunity. On appeal, appellants argue that the circuit court erred in its ruling. We affirm, in part, dismiss in part and remand.

## I. *Jurisdiction*

This court's jurisdiction is pursuant to Arkansas Rule of Appellate Procedure–Civil 2(a)(10), which permits an interlocutory appeal of an order denying a motion to dismiss based on the defense of sovereign immunity.

II. *Facts and Procedural History*

Amendment 98 to the Arkansas Constitution, commonly known as the Arkansas Medical Marijuana Amendment of 2016, is a comprehensive body of law governing the legalization of cannabis for medical purposes. Section 8 of amendment 98 charges the MMC with administering and licensing dispensaries and cultivation facilities. Amendment 98 further states that cultivation facilities must be licensed through an application process, and empowers the MMC to adopt rules governing "[t]he manner in which the commission considers applications." Ark. Const. amend. 98, § 8. Amendment 98 required that the MMC issue "at least four (4) but no more than (8) cultivation licenses." Ark. Const. amend. 98, § 8(j).

On July 10, 2018, the MMC issued medical marijuana cultivation licenses to each of the five highest-scoring applicants and, at the same time, announced that the sixth, seventh, and eighth highest-scoring applicants were River Valley Relief Cultivation (RVRC), New Day, and 2600 Holdings, doing business as Southern Roots. Not long thereafter, the MMC and the ABC received several protest letters, two of which specifically complained that RVRC's application was void because its proposed cultivation site was located within 3,000 feet of a public school, which violated an express provision in amendment 98. One of the applicants that was not awarded a cultivation license, 2600 Holdings, filed its original complaint on January 22, 2021. It amended its complaint on February 10, 2021, seeking a writ of mandamus and declaratory relief. In its amended complaint, 2600 Holdings stated: "This suit seeks to compel the Defendants (ADFA, MMC and ABC) to immediately take all steps necessary to correct an egregious injury to Southern

2

Roots caused by Defendants' failure and refusal to follow the mandates of a constitutional amendment adopted by the citizens of the State of Arkansas." Further, the amended complaint specifically asked the circuit court to compel ADFA, MMC, and/or ABC to revoke the cultivation facility license granted to Storm Nolan, the representative of RVRC, and award it instead to 2600 Holdings.

Appellants moved to dismiss. They asserted five grounds: (1) the complaint is barred by sovereign immunity because Plaintiff seeks to control the operations and administrative decisions of state agencies in the medical marijuana licensing and regulatory process; (2) under *Arkansas Department of Finance and Administration v. Naturalis Health, LLC*, 2018 Ark. 224, 549 S.W.3d 901, the decisions at issue are not subject to judicial review, and therefore, the circuit court lacks subject–matter jurisdiction over the claims raised in the complaint and should dismiss the complaint and amended complaint pursuant to Ark. R. Civ. P. 12(b)(1); (3) the complaint should be dismissed pursuant to Ark. R. Civ. P. 12(b)(6) because Plaintiff fails to state any cognizable legal claim; (4) Plaintiff's request for injunctive relief is moot and fails as a matter of law; and (5) Plaintiff's complaint should be dismissed pursuant to Rule 19 of the Arkansas Rules of Civil Procedure because it failed to name Storm Nolan, who was an indispensable party. After a hearing, the circuit court denied the motion to dismiss. Appellants timely filed a notice of appeal.

### III. *Standard of Review*

When we review a circuit court's decision on a motion to dismiss based on sovereign immunity, we treat the facts alleged in the complaint as true and view them in the light most favorable to the plaintiff. *Ark. Dep't of Fin. & Admin. v. Carpenter Farms Med. Grp.,*

*LLC,* 2020 Ark. 213, 601 S.W.3d 111. We focus "only to the allegations in the complaint and not to matters outside the complaint." *Id.* at 6, 601 S.W.3d at 117. We construe the pleadings liberally, resolving all reasonable inferences in the complaint's favor. *Id.* However, we review the issue of sovereign immunity de novo. *Id.* at 7, 601 S.W.3d at 117.

IV. *Writ of Mandamus*

Arkansas's doctrine of sovereign immunity originates in article 5, section 20 of the Arkansas Constitution, which provides that "[t]he State of Arkansas shall never be made defendant in any of her courts." We note, however, that article 5 of the Arkansas Constitution is the legislative article, which expressly deals with grants of power to, and limitations on, the power of the General Assembly. Accordingly, it is easy to overstate the implications of article 5, section 20 if it is considered in isolation and not within the context of the entire Arkansas Constitution. As this court stated in *Smith v. Cole*, 187 Ark. 471, 475, 61 S.W.2d 55, 57 (1933), "It is the duty of this court to harmonize all provisions of the Constitution and amendments thereto and to construe them with the view of a harmonious whole." Likewise, in *Wright v. Ward*, this court stated:

> The same general rules which govern the construction and interpretation of statutes and written instruments generally, apply to and control in the interpretation of written constitutions. They are made by practical and intelligent men for the practical administration of the government, and they are to receive that interpretation which will give effect to the intent of the framers as deducible from the language employed and operate most benignly in the interest of the governed, and best harmonize with and give effect to the general scope and design of the instruments. As in other written instruments, the intent and design of a particular provision being ascertained from the words used, effect will be given to it in harmony with such intent and design.

170 Ark. 464, 467, 280 S.W. 369, 370–71 (1926) (quoting with approval *People v. Fancher*, 50 N.Y. 288 (1872)).

Furthermore, in construing the Arkansas Constitution, well-recognized canons of construction apply. We recently held in *Rutledge v. Remmel*, 2022 Ark. 86, 643 S.W.3d 5, the general provision regarding sovereign immunity found in article 5, section 20, must yield to a specific express constitutional provision to the contrary. In that case we held that the constitutional provision concerning the right of the people to prosecute illegal exactions found in article 16, section 13 of the Arkansas Constitution must take precedence over the general concept of sovereign immunity. *Remmel* is consistent with well-established canons of construction providing that where a general term or expression in one part is inconsistent with more specific or particular provisions in another part, the particular provisions will be given effect as clearer and more definite expressions of the drafters' intent. *Hodges v. Dawdy*, 104 Ark. 583, 149 S.W. 656 (1912).

Here, 2600 Holdings has petitioned for a writ of mandamus. Writs of mandamus are provided for in Arkansas Constitution amendment 80, sections 2(E) and 10. Pursuant to these sections, the legislature empowered circuit courts with subject-matter jurisdiction to issue writs of mandamus. Ark. Code Ann. § 16-115-102; *See Rutledge v. Remmel*, 2022 Ark. 86, at 8; *Chessir v. Copeland*, 182 Ark. 425, 428, 32 S.W.2d 301, 302 (1930). We, therefore, hold that the sovereign-immunity defense does not preclude writs of mandamus. And consequently, the circuit court did not err in denying the motion to dismiss the writ of mandamus on the basis of sovereign immunity.

Citing *Arkansas Dep't of Hum. Servs. v. Fort Smith Sch. Dist.*, 2015 Ark. 81, 455 S.W.3d 294, appellants argue that the circuit court erred in denying their motion to dismiss based on sovereign immunity because 2600 Holdings seeks to control the lawful administrative decisions of MMC and ABC. However, in *Fort Smith*, the school district's complaint sought declaratory and injunctive relief, not a writ of mandamus as 2600 Holdings pleaded here. Furthermore, appellants reliance on *Fort Smith* is misplaced because this court affirmed the circuit court's denial of the Arkansas Department of Human Services' motion to dismiss based on sovereign immunity.

We also note that *Clowers v. Lassiter*, 363 Ark. 514, 213 S.W.3d 6 (2005), which served as the legal underpinning for *Arkansas Dep't of Human Services. v. Fort Smith School District*, 2015 Ark. 81, 455 S.W.3d 294, does not compel a different result. *Clowers* is like the case at bar because the litigant's complaint included a petition for writ of mandamus. In *Clowers*, a constable sued the Arkansas Crime Information Supervisory Board and the county sheriff because he wanted radio access to the Arkansas Crime Information Center (ACIC) information. The circuit court granted the ACIC's motion to dismiss, and the constable appealed that final order. *Clowers* held that because the constable was seeking to force a state agency to do something more than a purely ministerial action required by statute, sovereign immunity barred his suit. Significantly, the *Clowers* court affirmed a decision by the circuit court on the merits rejecting Clowers's request for a writ of mandamus.

We are mindful that in its lawsuit, 2600 Holdings seeks to compel the MMC to exercise its discretion in a particular way—strip Nolan of the license that MMC had issued to him and issue it to 2600 Holdings instead. Likewise, 2600 Holdings seeks to compel ABC

6

to exercise its enforcement responsibilities differently. However, whether a writ of mandamus is appropriate for this situation is a question that relates to the merits of the writ, which has yet to be decided by the circuit court. As noted previously, amendment 80 has vested Arkansas courts with the jurisdiction to consider whether a writ of mandamus is appropriate in this case. However, in an interlocutory appeal from an order denying a motion to dismiss based on sovereign immunity, a decision on the merits of the writ of mandamus is outside of our jurisdiction. Ark. R. App. P.–Civ. 2(a)(10).

## V. *Declaratory Judgment*

2600 Holdings also seeks declaratory judgment, which the State challenges on the basis of sovereign immunity. The amended complaint specifically requested the Court to issue a judgment against the State declaring and commanding that RVRC's cultivation facility license and permit be revoked and awarded instead to 2600 Holdings.

A lawsuit against the State seeking declaratory relief may survive a sovereign-immunity challenge only if the complaint alleges that the State acted illegally, unconstitutionally, or ultra vires. 2600 Holdings' request for declaratory relief fails to survive the State's sovereign immunity challenge. The complaint seeks to have RVRC's permit and license revoked and awarded to it, but it failed to plead that the State's actions are illegal or unconstitutional. *See contra Carpenter Farms Med. Grp.*, 2020 Ark. 213, 601 S.W.3d 111 (concluding that medical marijuana applicant sufficiently pleaded equal protection claim); *Ark. Dep't of Health v. Solomon*, 2022 Ark. 43, at 7 (holding that hearing dispenser licensee sufficiently pleaded a due process claim against the State). And although the complaint generally cites Amendment 98, it fails to state how the State's sanction of

RVRC violates the amendment. Therefore, we reverse the denial of the State's motion to dismiss and dismiss its claim of declaratory relief.

## VI. *Subject-Matter Jurisdiction*

Arguing in the alternative, appellants assert that, in this instance, the circuit court lacks subject–matter jurisdiction over 2600 Holdings's claims. Citing *Arkansas Dep't of Finance & Administration v. Naturalis Health, LLC*, 2018 Ark. 224, 549 S.W.3d 901, it contends that stare decisis requires that we dismiss this case. Appellants contend that the *Naturalis* court held that the APA does not permit judicial review of the MMC's decision to award a cultivation license to an absent third party, and this court therefore lacks subject–matter jurisdiction to review the claims raised in count II of 2600 Holdings' amended complaint.

In *Carpenter Farms*, this court noted:

> Section 212 of the APA permits judicial review of agency adjudications. Ark. Code Ann. § 25-15-212(a). But an adjudication takes place only following "the final disposition . . . in which the agency is required by law to make its determination after notice and hearing." Ark. Code Ann. § 25-15-202(1), (6) (Supp. 2019). Thus, only "quasi-judicial" agency functions support further judicial review. *Tripcony v. Ark. Sch. for the Deaf*, 2012 Ark. 188, at 7, 403 S.W.3d 559, 562. These functions will generally include hearing testimony, making findings of fact, rendering legal conclusions, and recording the proceedings. *See Sikes v. Gen. Publ'g Co.*, 264 Ark. 1, 7, 568 S.W.2d 33, 36(1978).

2020 Ark. 213, at 8, 601 S.W.3d at 118.

In accordance with this analysis, the *Carpenter Farms* court dismissed for want of subject-matter jurisdiction. We hold that *Carpenter Farms* and *Naturalis* control, and, to the extent that appellants are seeking relief under the APA, this case must be dismissed for lack

8

of subject-matter jurisdiction. The question of subject-matter jurisdiction is always open and can be raised at any time. *E.g.*, *Dent v. Wright*, 322 Ark. 256, 909 S.W.2d 302 (1995).

Affirmed in part; dismissed in part and remanded.

Special Justice EMILY WHITE joins.

BAKER, J., concurs.

WYNNE and WOMACK, JJ., concur in part and dissent in part.

HUDSON, J., not participating.

**ROBIN F. WYNNE, Justice, concurring in part and dissenting in part**. I agree with the majority that sovereign immunity does not bar 2600 Holdings' request for a writ of mandamus. But I would also hold that sovereign immunity does not bar 2600 Holdings' claim for declaratory relief.

We allow declaratory-judgment actions against the State if the complaint alleges illegal and unconstitutional acts in compliance with our fact-pleading rules. *Ark. Dep't of Educ. v. McCoy*, 2021 Ark. 136, at 7, 624 S.W.3d 687, 692. The majority concludes that 2600 Holdings failed to plead that the State's actions were illegal or unconstitutional. I disagree. The complaint alleges that RVRC's application indicated that its cultivation facility was located within 3000 feet of a juvenile-detention facility—considered to be a school by the MMC—in violation of amendment 98, section 8(g)(2), which provides that a cultivation facility application "shall include without limitation" a physical address that is not "within three thousand feet (3000') of a public or private school…" The complaint alleges that Storm Nolan voluntarily dissolved RVRC after failing to receive a cultivation facility license and that the MMC awarded the license to Nolan fourteen months *after* he dissolved RVRC,

9

in violation of amendment 98, section 10(b)(2), which requires that a cultivation facility "shall be an entity incorporated in the State of Arkansas." The complaint further alleges that the ABC has failed to enforce these constitutional provisions in violation of amendment 98, section 8(a)(3), which mandates that the ABC "shall administer and enforce the provisions of [amendment 98] concerning dispensaries and cultivation facilities" by not rescinding the unconstitutionally awarded license.

In my view, considering the facts in the complaint in the light most favorable to 2600 Holdings, the complaint has sufficiently pleaded facts to overcome sovereign immunity. The complaint alleges that the MMC and the ABC violated the express provisions of amendment 98—specifically, sections 8(a)(3), 8(g)(2), and 10(b)(2)—when they issued a cultivation license to RVRC and then failed to rescind it. Whether 2600 Holdings is entitled to relief on its claims is not the issue at this point; the sole issue before this court in this interlocutory appeal is whether the State is entitled to sovereign immunity. Because I think the illegal-act exception applies, I would hold that sovereign immunity does not bar the declaratory-judgment claim.

Finally, I do not agree that the trial court lacks subject-matter jurisdiction over the declaratory-judgment claim. The cases cited by the majority, *Arkansas Department of Finance & Administration v. Naturalis Health, LLC*, 2018 Ark. 224, 549 S.W.3d 901, and *Arkansas Department of Finance & Administration v. Carpenter Farms Medical Group, LLC*, 2020 Ark. 213, 601 S.W.3d 111, involve claims arising under the Administrative Procedure Act (APA). But 2600 Holdings' complaint does not seek relief under the APA; it seeks a declaratory judgment. And the trial court has subject-matter jurisdiction to issue declaratory relief under

the Arkansas Declaratory Judgment Act, Arkansas Code Annotated sections 16–11–101 et seq.

**SHAWN A. WOMACK, Justice, concurring in part and dissenting in part**. Because the Arkansas Constitution bars 2600 Holdings' lawsuit against the State in its entirety, I cannot join the majority. Ark. Const. art. 5, § 20. Absent an express constitutional provision to the contrary, the State can never properly be a defendant in any of its courts. *Thurston v. League of Women Voters of Ark.*, 2022 Ark. 32, at 17, 639 S.W.3d 319, 327 (Womack, J., dissenting). One example of such provision is article 16, section 13, which permits illegal exaction claims against the State. *Rutledge v. Remmel*, 2022 Ark. 86, at 10, 643 S.W.3d 5, 11 (Womack, J., concurring). But, contrary to the claims of the majority, Amendment 80 provides no analogous provision that would undermine article 5, section 20.

In support of the proposition that article 5, section 20 has no bearing on writs of mandamus against the State, the majority cites sections 2(E) and 10 of Amendment 80. As I have detailed before, section 10 of Amendment 80 provides "that '[t]he General Assembly shall have the power to establish jurisdiction of all courts and venues of all actions therein, *unless otherwise provided in this Constitution*.'" *Perry v. Payne*, 2022 Ark. 112, at 3 (Womack, J., dissenting) (citing Ark. Const. amend. 80, § 10 (emphasis added)). "[T]he presence of the language 'unless otherwise provided in this Constitution' makes explicit that Amendment 80, § 10 yields to more specific jurisdictional provisions within the constitution, such as article 5, § 20." *Id.*; *accord Muntaqim v. Payne*, 2021 Ark. 162, at 3, 628 S.W.3d 629, 634 (holding that "[s]overeign immunity is jurisdictional immunity from suit").

11

Thus, Amendment 80, section 10 provides no viable avenue for the majority's theory that a writ of mandamus can lie against State actors. *See, e.g.*, *Clowers v. Lassiter*, 363 Ark. 241, 247, 213 S.W.3d 6, 11 (2005) (holding that sovereign immunity bars a writ of mandamus against the State when the writ seeks to control "more than purely a ministerial action").

Recognizing the obvious inconsistency and weakness of the theory advanced in *Perry*, this majority does its best to provide an alternate, sounder theory: Amendment 80, section 2(E). Yet, I remain unpersuaded. This provision states that this court "shall have the power to issue and determine any and all writs necessary *in aid of its jurisdiction*." Ark. Const. amend. 80, § 2(E) (emphasis added). As with section 10, the scope of section 2(E) is limited to writs within this court's jurisdiction. *Id.* Because lawsuits against the State are generally outside the jurisdiction of this court, section 2(E) cannot serve as a basis for allowing writs of mandamus to lie against these defendants. *See League of Women Voters of Ark.*, 2022 Ark. 32, at 17, 639 S.W.3d at 327. Therefore, I would hold that sovereign immunity bars 2600 Holdings' petition for a writ of mandamus against the State.

Consequently, the effect of the APA is irrelevant. Engaging in an analysis of whether a circuit court has subject–matter jurisdiction under the APA undermines the jurisdictional nature of sovereign immunity: liability from suit. *Id.* (remarking that "once litigation proceeds against an immune defendant, the defendant has essentially lost this protection, regardless of the outcome"). Unless a constitutional provision expressly provides a judicial remedy against the State, this jurisdictional bar exists simply by virtue of the State's placement on the right side of the "*v.*"; the effect of the APA is irrelevant. *Id.* Despite this court's holding in *Arkansas Department of Finance and Administration v. Naturalis Health, LLC,*

12

or any purported waiver of sovereign immunity contained in the APA, this court lacks jurisdiction because of article 5, section 20. *Cf.* 2018 Ark. 224, at 8, 549 S.W.3d 901, 907; *cf.* Ark. Code Ann. § 25-15-214. To entertain whether the APA confers subject-matter jurisdiction would undermine the paramount law: the Arkansas Constitution. Thus, the court first lacks subject-matter jurisdiction under article 5, section 20, not the APA, and I would dismiss accordingly. *See League of Women Voters of Ark.*, 2022 Ark. 32, at 17, 639 S.W.3d at 327 (Womack, J., dissenting).

For these reasons, I would reverse and dismiss the case in its entirety and base the disposition solely on article 5, section 20. I respectfully concur in part and dissent in part.

*Leslie Rutledge*, Att'y Gen., by: *Jennifer L. Merritt*, Sr. Ass't Att'y Gen., for appellee.

*Cross, Gunter, Witherspoon & Galchus, P.C.*, by: *Carolyn B. Witherspoon*, *Abtin Mehdizadegan*, and *Brett W. Taylor*, for appellee.