Cite as 2023 Ark. 47

# SUPREME COURT OF ARKANSAS
**No.** CV–22–347

|  |  |
|---|---|
| | **Opinion Delivered:** March 16, 2023 |
| OSAGE CREEK CULTIVATION, LLC; DELTA MEDICAL CANNABIS COMPANY, LLC; BOLD TEAM, LLC; NATURAL STATE MEDICINALS CULTIVATION, LLC; AND GOOD DAY FARM ARKANSAS, LLC<br><br>APPELLANTS | APPEAL FROM THE PULASKI COUNTY CIRCUIT COURT [NO. 60CV–21–5305]<br><br>HONORABLE MORGAN E. WELCH, JUDGE |
| V. | |
| ARKANSAS DEPARTMENT OF FINANCE AND ADMINISTRATION; ARKANSAS ALCOHOLIC BEVERAGE CONTROL DIVISION; ARKANSAS MEDICAL MARIJUANA COMMISSION; CARPENTER FARMS MEDICAL GROUP, LLC; RIVER VALLEY RELIEF CULTIVATION, LLC; RIVER VALLEY PRODUCTION, LLC, D/B/A RIVER VALLEY RELIEF CULTIVATION; RIVER VALLEY PRODUCTION, LLC; AND NEW DAY CULTIVATION, LLC<br><br>APPELLEES | AFFIRMED. |

**RHONDA K. WOOD, Associate Justice**

Appellants allege the Arkansas Medical Marijuana Commission granted a marijuana-cultivation license to a corporate entity that had been dissolved. As existing cultivation license holders, they challenged this decision and then sued when the Commission refused to revoke the new license. The circuit court, however, dismissed their complaint. The court held that the complaint surmounted the State's sovereign immunity but held that subject-

matter jurisdiction was lacking and that the challengers lacked standing. We affirm this order on appeal but for different reasons: the circuit court had subject-matter jurisdiction but still properly dismissed the complaint because it failed to state facts to surmount the State's sovereign-immunity defense.[1]

## I. *Factual Background*

In 2016, Arkansas voters approved the sale of medical marijuana by passing Amendment 98. This amendment established the Medical Marijuana Commission and authorized the Commission to grant between four and eight marijuana-cultivation licenses. Ark. Const. amend. 98, § 8(j). The Commission decided to grant and award five initial licenses in 2018. Appellants are the five entities with the initial licensed cultivation facilities. They filed the lawsuit underlying this appeal.[2] All relevant facts have been taken from their second amended complaint, and we treat the allegations as true for this appeal. *E.g.*, *Monsanto Co. v. Ark. St. Plant Bd.*, 2019 Ark 194, at 8, 576 S.W.3d 8, 13.

In 2020, the Commission, allegedly without following applicable rules, decided to grant three more cultivation licenses. This brought the number of licenses granted to eight, the constitutional maximum. The Commission granted one of these new licenses to Bennet Nolan, operating through River Valley Production, LLC ("River Valley Production I").

---

[1]Because we dismiss on sovereign-immunity grounds, we do not address standing.

[2]Osage Creek Cultivation, LLC; Delta Medical Cannabis Company, LLC; Bold Team, LLC; Natural State Medicinals Cultivation, LLC; and Natural State Wellness Enterprises, LLC. Good Day Farm Arkansas, LLC, acquired a license from Natural State Wellness and now stands in its shoes as a plaintiff/appellant in this case.

But there was one problem: River Valley Production I had been dissolved by articles of dissolution filed on March 20, 2019. To rectify this problem, two new entities were formed:

- River Valley Relief Cultivation, LLC ("River Valley Relief"), an Arkansas limited liability company; and

- River Valley Production, LLC ("River Valley Production II"), another Arkansas limited liability company.

Both the Commission and the Alcoholic Beverage Control Division, an enforcement body, received a complaint from the original five cultivators about the license granted to Nolan because River Valley Production I had been dissolved. They requested that his cultivation license be revoked. But rather than revoke the license, or hold a hearing on the complaints, the ABC Division entered into a settlement agreement with Nolan and River Valley Production II, allowing them to retain the license.[3]

After this settlement, the five initial cultivators sued the Commission; the ABC Division; the Department of Finance and Administration; Nolan's three River Valley entities; and the two other new cultivation-license holders.[4] The complaint sought a declaratory judgment and injunctive relief. The initial cultivators argued the Commission exceeded its constitutional authority when it issued a license to a dissolved legal entity, River Valley Production I. They also argued that the license was void.

The defendants moved to dismiss the lawsuit. The arguments included that the complaint was barred by sovereign immunity; that the circuit court lacked subject–matter

---

[3]River Valley Relief had received its license on July 17, 2020, but was dissolved a short time later. Presumably, the license then transferred to River Valley Production II.

[4]Carpenter Farms Medical Group, LLC, and New Day Cultivation, LLC.

jurisdiction; and that the cultivators lacked standing. The cultivators filed a motion for summary judgment. The court granted the motion to dismiss and dismissed the motion for summary judgment as moot.

First, the court concluded the complaint surmounted sovereign immunity because the complaint included sufficient detailed facts that the state actors had acted ultra vires and unconstitutionally. Second, the court found that it lacked subject–matter jurisdiction because no adjudication had occurred within the meaning of the Administrative Procedure Act, a necessary predicate for judicial review of agency decisions in circuit court, and they did not bring an applicability challenge. Third, the court concluded the cultivators lacked standing because their cultivation permits were not "directly affected by the actions of the Commission."

The five initial cultivators, appellants, filed this appeal. They limited their appeal to a single claim from their complaint, "Count 3," which challenged the Commission's decision to allegedly grant a license to a dissolved corporate entity. They argue the circuit court erred by finding it lacked subject-matter jurisdiction because they sought declaratory and injunctive relief only, so the adjudication requirement of the APA did not apply. They also argue the circuit court wrongly held that they lacked standing because the issuance of more cultivation licenses caused an injury to their market share.

II.  *Law and Analysis*

A.  Subject–Matter Jurisdiction

Applying the APA, the circuit court dismissed the complaint for lack of subject–matter jurisdiction. Appellants correctly point out that the APA was not the jurisdictional

4

basis for this count of their claim. The complaint references both the APA and the declaratory-judgment statute (Ark. Code Ann. §§ 16-111-101 et seq. (Repl. 2016 & Supp. 2021)) as a basis for relief. We agree this claim fell within the circuit court's subject-matter jurisdiction under the declaratory-judgment statute.

Subject-matter jurisdiction implicates a court's authority to hear and decide a particular type of case. *Ark. Dep't of Fin. & Admin. v. Naturalis Health, LLC*, 2018 Ark. 224, at 6, 549 S.W.3d 901, 906. A court receives subject-matter jurisdiction from the Arkansas Constitution or constitutionally authorized statutes or court rules. *Id.* "A court lacks subject-matter jurisdiction if it cannot hear a matter under any circumstances and is wholly incompetent to grant the relief sought." *Ark. Dep't of Health v. Solomon*, 2022 Ark. 43, at 5. We review the pleadings to make a de novo determination whether a court had subject-matter jurisdiction. *Tripcony v. Ark. Sch. for the Deaf*, 2012 Ark. 188, at 4, 403 S.W.3d 559, 561.

Circuit courts' power to grant a declaratory judgment is conferred by statute: "Courts of record within their respective jurisdictions shall have power to declare rights, status, and other legal relations whether or not further relief is or could be claimed." Ark. Code Ann. § 16-111-101. When a complaint alleges claims under both the APA and the declaratory-judgment statute, a circuit court must separate out whether it has subject-matter jurisdiction under either. The circuit court found the appellants lacked subject-matter jurisdiction for the APA claims, but the circuit court did not analyze jurisdiction for this declaratory-judgment claim.

An APA claim may fail for lack of subject-matter jurisdiction, but the declaratory-judgment claim may survive. In a recent case involving the Commission, we held that the circuit court had subject-matter jurisdiction under the declaratory-judgment statute to consider whether the Commission had violated an applicant's equal-protection and due-process rights. *Ark. Dep't of Fin. & Admin. v. Carpenter Farms Med. Grp., LLC*, 2020 Ark. 213, at 14, 601 S.W.3d 111, 121 (plurality opinion). At the same time, we held the complaint could not proceed under certain sections of the APA. *Id.* at 9, 601 S.W.3d at 118. Similarly, in *Solomon*, we found that the circuit court lacked subject-matter jurisdiction over the APA claims as pleaded; but we still held that the court had subject-matter jurisdiction over the declaratory-judgment claims. 2022 Ark. 43, at 5–6. The circuit court erred by not finding subject-matter jurisdiction over the claim for declaratory judgment that the State had acted ultra vires.

## B. Sovereign Immunity

The circuit court did find that the appellants' claim survived sovereign immunity. We disagree. The State's sovereign immunity derives from Article 5, section 20 of the Arkansas Constitution: "The State of Arkansas shall never be made defendant in any of her courts." We have held that lawsuits seeking financial damages from the State are barred by sovereign immunity. *Bd. of Trs. of Univ. of Ark. v. Andrews*, 2018 Ark. 12, at 12, 535 S.W.3d 616, 623. On the other hand, lawsuits seeking declaratory or injunctive relief against state officials committing ultra vires, unconstitutional, or illegal acts can go forward. *See Martin v. Haas*, 2018 Ark. 283, at 7–8, 556 S.W.3d 509, 514–15. But a lawsuit of this kind must

still plead facts that, if proven, would establish entitlement to relief. *Williams v. McCoy*, 2018 Ark. 17, at 4, 535 S.W.3d 266, 269.

In another lawsuit involving similar facts to those here, we held that the declaratory-judgment component of the complaint failed to surmount the State's sovereign-immunity defense. *Ark. Dep't of Fin. & Admin. v. 2600 Holdings, LLC*, 2022 Ark. 140, at 7–8, 646 S.W.3d 99, 103–04.[5] Even as more fully pleaded here, we find Count 3 does not surmount sovereign immunity.[6] *See, e.g.*, *Solomon*, 2022 Ark. 43, at 8. We therefore affirm the circuit court's dismissal order on this basis. *Ark. State Bd. of Election Comm'rs v. Pulaski Cnty. Election Comm'n*, 2014 Ark. 236, at 12, 437 S.W.3d 80, 87 ("This court may affirm a circuit court where it has reached the right decision, albeit for the wrong reason, so long as the issue was raised and a record was developed below.").

Affirmed.

BAKER, HUDSON, WYNNE, and WOMACK, JJ., concur.

---

[5]The circuit court did not have the benefit of our opinion in *2600 Holdings* when it made its decision.

[6]The concurring justice contends it is inappropriate to refer to the decision in *2600 Holdings* because the majority there did not expressly mention a "dissolved entity" in the facts. In holding the declaratory-judgment claim insufficient for sovereign immunity purposes, we noted the conclusory nature of the allegations, stating, "the complaint generally cites Amendment 98" without alleging how the State's actions violated the amendment. 2022 Ark. at 7–8, 646 S.W.3d at 103-04. Moreover, the concurring justice in *2600 Holdings* further explained that the complaint rested, in part, on a "dissolved entity" allegation. *Id.* at 9–10, 646 S.W.3d at 105. No rule prevents us from recognizing facts expressed in this concurring opinion.

**COURTNEY RAE HUDSON, Justice, concurring.** I agree with the plurality opinion that appellants' complaint failed to state facts to surmount the State's sovereign-immunity defense. I write separately because I believe the plurality improperly relies on a majority opinion that does not describe the facts in sufficient detail to be deemed controlling in this case. Compounding the error, the plurality has skipped a step to reach its result.

As an initial matter, I agree that the circuit court had subject-matter jurisdiction under the declaratory-judgment statute to consider whether the State acted ultra vires in awarding a cultivation license to Bennet Nolan. Therefore, I join Section II(A) of the opinion in holding that the circuit court erred in finding otherwise. However, I cannot endorse the shortcuts the plurality takes thereafter, and I do not join Section II(B).

The plurality summarily finds that the State is entitled to sovereign immunity and deftly sidesteps the issue of appellants' standing. Below and on appeal, appellees have challenged appellants' standing, which is a threshold issue. *Jones v. Prof'l Background Screening Assn, Inc.*, 2020 Ark. 362, 610 S.W.3d 640. Therefore, we must first address standing before considering whether sovereign immunity applies. *Bomar v. Moser*, 369 Ark. 123, 251 S.W.3d 234 (2007).

The circuit court ruled that the appellants lacked standing. The question of standing is a matter of law that we review de novo. *Palade v. Bd. of Trs. of Univ. of Ark. Sys.*, 2022 Ark. 119, 645 S.W.3d 1. We have said that to establish standing, a party is only required to show that it is among the class of persons affected by the rule. *Monsanto Co. v. Ark. State Plant Bd.*, 2021 Ark. 103, 622 S.W.3d 166. In this instance, appellees assert that the MMC's granting of additional cultivation licenses harms their economic interests by diluting the

market. They claim that the MMC's action will result in a loss of customers and loss of sales, which will adversely affect their economic interests. Here, appellants will undoubtedly be affected by the MMC's decision. Current cultivation-license holders necessarily have standing to challenge what they allege to be a license illegally awarded to another entity. The medical-marijuana industry is unique in that it is tightly regulated, and limited cultivation licenses are authorized by Amendment 98. Consequently, missteps by the MMC could have drastic impacts on those who hold a cultivation license. The appellants are affected by the MMC's actions, and they have standing to assert their claims.

Because appellants have standing, I now turn to the MMC's entitlement to sovereign immunity. Sovereign immunity is an affirmative defense that must be raised and ruled on at the circuit court level to preserve the issue. *Wilson v. Ark. Dep't of Hum. Servs.*, 2018 Ark. 358, 562 S.W.3d 201. Although the circuit court did not base its decision on sovereign immunity, the MMC did raise the issue below, the circuit court ruled on it, and the MMC continues to assert on appeal that it is entitled to sovereign immunity. The MMC notes that we can affirm the circuit court for any reason supported by the record.

The plurality relies entirely on this court's opinion in *Arkansas Department of Finance & Administration v. 2600 Holdings, LLC*, 2022 Ark. 140, 646 S.W.3d 99, because it claims that this case involves "similar facts." Yet, the only relevant, specific factual backdrop the *2600 Holdings* majority mentioned was that the "proposed cultivation site was located within 3,000 feet of a public school, which violated an express provision in amendment 98." *Id*. at 2, 646 S.W.3d 101. Here, the parties do not challenge the location of the cultivation site. By contrast, the case at bar concerns a license issued to a dissolved entity. The *2600 Holdings*

9

majority makes absolutely no mention of a dissolved entity in its recitation of the facts or analysis of law. It is inappropriate for the plurality to now suggest facts that did not exist in the *2600 Holdings* majority opinion.[1] Therefore, it is difficult to conclude that this case involves "similar facts" as those in *2600 Holdings*. In any event, the parties deserve a more fulsome explanation of this court's reasoning.

The MMC is a state agency. The doctrine of sovereign immunity extends to state agencies. *Steve's Auto Ctr. of Conway, Inc. v. Ark. State Police*, 2020 Ark. 58, 592 S.W.3d 695. If a judgment in favor of a plaintiff would operate to control the action of the State or subject it to liability, the suit is one against the State and is barred by the doctrine of sovereign immunity. *Ark. Tech. Univ. v. Link*, 341 Ark. 495, 17 S.W.3d 809 (2000). However, the defense of sovereign immunity is inapplicable in a lawsuit seeking only declaratory or injunctive relief and alleging an illegal, unconstitutional, or ultra vires act. *Martin v. Haas*, 2018 Ark. 283, 556 S.W.3d 509. A plaintiff seeking to surmount sovereign immunity under this exception is not exempt from complying with our fact-pleading requirements. *Harris v. Hutchinson*, 2020 Ark. 3, 591 S.W.3d 778. Rule 8(a) (2022) of the Arkansas Rules of Civil Procedure requires "a statement in ordinary and concise language of facts showing . . . that the pleader is entitled to relief." The complaint must provide facts to state a claim based on illegal, unconstitutional, or ultra vires State action, and short, conclusory statements and bare allegations will not do. *Harris*, 2020 Ark. 3, 591 S.W.3d 778.

---

[1]It is only a concurring/dissenting opinion in *2600 Holdings* that makes any such factual reference. A concurring/dissenting opinion does not operate to cure deficits or omissions in a majority opinion.

The heart of appellants' argument is that the MMC violated section 10(b)(2), which states that a "cultivation facility shall be an entity incorporated in the State of Arkansas." We should examine this requirement in relation to Amendment 98's constitutional framework. Context within the constitutional amendment provides much guidance. Significantly, section 10 is entitled "Dispensary and cultivation facility inspections and requirements[,]" and section 10(b)(1) states that "[t]his subsection governs the *operations* of dispensaries and cultivation facilities." (Emphasis added.) To be clear, the dispute in this case is about licensing and not operations. Licensing is addressed separately in section 8. Section 8(q)(1) simply mandates that "[a] license for a dispensary or cultivation facility shall only be issued to a natural person." Here, in compliance with section 8(q)(1), the MMC awarded the cultivation license to Nolan, who is a natural person.

In other words, appellants raise an issue of timing. When does the requirement of section 10(b)(2) "kick in"? In short, not during the licensing phase. When cultivation operations commence, section 10(b)(2) requires the entity to be incorporated in the State of Arkansas. At the time the MMC issued the license to Nolan, it mattered not that the entity had been dissolved. Therefore, the complaint does not state facts that allege an illegal, unconstitutional, or ultra vires act. Thus, I agree with the plurality that the MMC is entitled to sovereign immunity and that the circuit court reached the right result, albeit for the wrong reason.

I concur.

**ROBIN F. WYNNE, Justice, concurring.** I agree with the majority that the circuit court had subject-matter jurisdiction over appellants' claim that the State acted ultra vires in

11

issuing the River Valley cultivation license. But I also think that the circuit court correctly determined that this claim was not barred by sovereign immunity. Because I would affirm the circuit court's dismissal order on the basis that appellants lack standing, I respectfully concur.

As the majority explains, a lawsuit seeking declaratory or injunctive relief against the State is not barred by sovereign immunity if the complaint alleges that the State acted illegally, unconstitutionally, or ultra vires. *See Martin v. Haas*, 2018 Ark. 283, at 7–8, 556 S.W.3d 509, 514–15. The majority holds that the complaint in this case failed to state facts sufficient to overcome sovereign immunity.

I disagree. In reviewing an order granting a motion to dismiss, we treat the facts alleged in the complaint as true and view them in the light most favorable to the plaintiff. *Thurston v. League of Women Voters of Ark.*, 2022 Ark. 32, at 4, 639 S.W.3d 319, 321. Moreover, all reasonable inferences must be resolved in favor of the complaint, and all pleadings are to be liberally construed. *Id.* at 4, 639 S.W.3d at 321. Count 3 of the operative complaint alleges that River Valley Production I was dissolved in March 2019; that River Valley Production I was not an entity incorporated in Arkansas when the MMC voted to issue it a cultivation license on June 30, 2020; that the MMC does not have the legal authority to issue a cultivation license to a dissolved entity; and that the MMC acted ultra vires when it voted to issue the cultivation license because River Valley Production I had been dissolved for over a year. The complaint identifies the specific constitutional provision the MMC allegedly violated—amendment 98, section 10(b)(2), which provides that "a cultivation facility shall be an entity incorporated in the State of Arkansas." In my view, the

allegation that the MMC contravened amendment 98 when it issued the River Valley cultivation license is sufficient to overcome sovereign immunity. *See Ark. Dep't of Fin. & Admin. v. 2600 Holdings, LLC*, 2022 Ark. 140, at 9–10, 646 S.W.3d 99, 104–05 (Wynne, J., concurring in part and dissenting in part) (sovereign immunity does not bar declaratory-judgment claim that the MMC and the ABC violated amendment 98 by issuing a cultivation license to River Valley).

Although I do not think sovereign immunity bars this declaratory-judgment action, I would nonetheless affirm the dismissal of the complaint because I do not think appellants have standing. In its dismissal order, the circuit court concluded that the appellants lacked standing because they were permittees, not applicants, and their permits were not directly affected by the MMC's actions. Only a claimant who has a personal stake in the outcome of a controversy has standing. *Nelson v. Ark. Rural Med. Prac. Loan & Scholarship Bd.*, 2011 Ark. 491, at 11, 385 S.W.3d 762, 769. This court has held that the party seeking declaratory relief must have a legal interest in the controversy; in other words, a legally protectable interest. *Palade v. Bd. of Trs. of Univ. of Ark. Sys.*, 2022 Ark. 119, at 7, 645 S.W.3d 1, 5. Moreover, we have stated that "a declaratory judgment will not be granted unless the danger or dilemma of the plaintiff is present, not contingent on the happening of hypothetical future events; the prejudice to his position must be actual and genuine and not merely possible, speculative, contingent, or remote." *Id*. at 8, 645 Ark. at 6 (quoting *Nelson*, 2011 Ark. 491, at 12, 385 S.W.3d at 769).

Appellants contend that they have standing because the issuance of a cultivation license to River Valley would dilute their market share, cost them dispensary customers,

and reduce their sale of medical marijuana. In support of their standing argument, appellants cite *Arkansas Beverage Retailers Association, Inc. v. Moore*, 369 Ark. 498, 506–08, 256 S.W.3d 488, 494–95 (2007), a case brought under the Arkansas Administrative Procedure Act (APA) in which this court determined that an association of liquor stores had standing to seek judicial review of ABC's issuance of a liquor license to Sam's Club. We reasoned that the Arkansas Beverage Retailers Association demonstrated that its members would be treated differently from Sam's Club because Sam's Club could sell other goods, putting the liquor stores at a competitive disadvantage. *Id.* at 507, 256 S.W.3d at 495. Appellants also cite *Moore v. Arkansas Alcoholic Beverage Control Bd.*, 2016 Ark. 422, at 4, 503 S.W.3d 796, 800, another APA case in which we held that a liquor store owner had standing to seek judicial review of ABC's decision to issue a liquor permit for a nearby location that would be in direct competition with the store.

These cases can be distinguished. Both *Arkansas Beverage Retailers Association v. Moore* and *Moore v. Arkansas Alcoholic Beverage Control Bd.* address standing under the APA. The APA provides that "[i]n cases of adjudication, any person . . .who considers himself or herself injured in his or her person, business, or property by final agency action shall be entitled to judicial review of the action under this subchapter." Ark. Code Ann. § 25-15-212(a) (Supp. 2021). But standing under the APA does not apply to this declaratory-judgment claim. Plus, *Arkansas Beverage Retailers Association v. Moore* challenged an agency decision that was based on allegations of disparate treatment and competitive advantage, while the challenge in *Moore v. Arkansas Alcoholic Beverage Control Bd.* turned on geographic proximity. Such

14

considerations—which are more specific than mere dilution of market share—are not present here.

Even accepting appellants' loss-of-market-share allegation as true, as we must, I do not think that appellants have a legally protectable interest sufficient to confer standing. Appellants already hold cultivation licenses, which are not at stake. Appellants were aware at the time they received their licenses that amendment 98 authorizes the issuance of up to eight cultivation licenses, so they had a legally protectable interest in, at most, a one-eighth market share. They never had a legally protectable interest in a one-fifth (or one-seventh) market share. And even if River Valley's license were rescinded, the MMC could turn around and issue the eighth cultivation license to the next applicant in line. Appellants cannot show an actual and genuine prejudice to their position from the MMC's decision to award a license to River Valley. Accordingly, I would affirm the circuit court's dismissal of the complaint for lack of standing.

I respectfully concur.

**SHAWN A. WOMACK, Justice, concurring.** The decision to affirm the circuit court's dismissal because of sovereign immunity is correct, but the majority's analysis is flawed. Further, because sovereign immunity is immunity from suit, the analysis should begin on this point and end once it is determined that immunity applies. *Thurston v. League of Women Voters of Ark.*, 2022 Ark. 32, at 17, 639 S.W.3d 319, 327 (Womack, J., dissenting). If a party is immune from suit, there is no reason to evaluate issues of subject-matter jurisdiction under the Declaratory Judgment Act or standing because they become irrelevant immediately upon the determination of sovereign immunity. *See Ark. Dep't of Fin. &*

*Admin. v. 2600 Holdings, LLC*, 2022 Ark. 140, at 13, 646 S.W.3d 99, 106 (Womack, J., concurring in part and dissenting in part) (explaining why we should not consider statutory-based subject-matter jurisdiction when sovereign immunity bars the lawsuit); *see also Palade v. Bd. of Trustees of Univ. of Ark. Sys.,* 2022 Ark. 119, at 13, 645 S.W.3d 1, at 8 (Womack, J., concurring) (addressing why consideration of sovereign immunity comes before consideration of standing).

As I have previously written, "[a]bsent an express constitutional provision to the contrary, the State can never properly be a defendant in any of its courts." *2600 Holdings, LLC,* 2022 Ark. 140, at 11, 646 S.W.3d at 105 (Womack, J., concurring in part and dissenting in part citing *League of Women Voters of Ark.*, 2022 Ark. 32, at 17, 639 S.W.3d at 327 (Womack, J., dissenting))). The judicially created exceptions to sovereign immunity for illegal, unconstitutional, or *ultra vires* acts are completely divorced from the plain text and original meaning of our constitution and are "purely this court's attempt at crafting public policy for the State." *League of Women Voters of Ark.*, 2022 Ark. 32, at 16, 639 S.W.3d at 327 (Womack, J., dissenting). The circuit court was simply without jurisdiction to consider Osage Creek's lawsuit because article 5, section 20 affords the State immunity from suit in most instances, and none of the limited, *constitutionally based* exceptions was present here. *See id.* at 17, 639 S.W.3d at 327 (Womack, J., dissenting).

I again note that "[t]he structural design of our constitution dictates that the power to change article 5, section 20 lies not with the courts, but rather exclusively with the people of the state of Arkansas[,]" and "our precedent recognizing exceptions to the constitution usurps this constitutionally enshrined prerogative." *Id.* at 22, 639 S.W.3d at 330 (Womack,

J., dissenting (citing Ark. Const. art. 5, § 1 and Ark. Const. art. 19, § 22)). Our constitution should control this disposition, not our precedent.

Accordingly, I concur in the judgment only.

*Castleberry Law Firm, PLLC*, by: *Kenneth P. "Casey" Castleberry*; and *Fuqua Campbell, P.A.*, by: *Eric R. Gribble* and *Annie Depper*, for appellants.

*Leslie Rutledge*, Att'y Gen., by: *Jordan Broyles*, Sr. Ass't Att'y Gen.; and *Matthew Ford*, Ass't Att'y Gen., for appellees Arkansas Department of Finance & Administration, Arkansas Alcoholic Beverage Control Division, and Arkansas Medical Marijuana Commission.

*Charles R. Singleton, P.A.*, by: *Charles R. Singleton*, for appellee New Day Cultivation, LLC.

*Harper Law Office*, by: *R. Victor Harper*; and *Law Offices of Matt Simmons, Esq., Chtd.*, by: *Matt Simmons* (pro hac vice), for appellee Carpenter Farms Medical Group, LLC.

*Smith, Cohen & Horan, PLC*, by: *Matthew T. Horan* and *Stephen C. Smith*, for appellees River Valley Relief Cultivation, LLC; and River Valley Production, LLC, d/b/a River Valley Relief Cultivation.