Cite as 2023 Ark. 153

# SUPREME COURT OF ARKANSAS

**No.** CV–23–50

| | |
|---|---|
| CHEROKEE NATION BUSINESSES, LLC; LEGENDS RESORT AND CASINO, LLC; AND THE ARKANSAS RACING COMMISSION<br><br>APPELLANTS<br><br>V.<br><br>GULFSIDE CASINO PARTNERSHIP; AND CHOCTAW NATION OF OKLAHOMA<br><br>APPELLEES | **Opinion Delivered:** October 26, 2023<br><br>APPEAL FROM THE PULASKI COUNTY CIRCUIT COURT [NO. 60CV-21-1653]<br><br>HONORABLE TIMOTHY DAVIS FOX, JUDGE<br><br>AFFIRMED. |

**CODY HILAND, Associate Justice**

This appeal arises from ongoing litigation concerning amendment 100 to the Arkansas Constitution, which provides for the issuance of the Pope County casino license. This third iteration of appeals concerns the Arkansas Racing Commission's ("ARC's") decision to award the license to Cherokee Nation Businesses, LLC ("CNB"), and Legends Resort and Casino, LLC ("Legends"). Gulfside Casino Partnership ("Gulfside") challenged that the ARC's action was *ultra vires* as it was issued in violation of the clear language of amendment 100 and therefore unconstitutional. The circuit court agreed and held that the license so issued was a "legal nullity, void and of no effect." For the reasons below, we affirm.

I. *Factual and Procedural Background*

Amendment 100 to the Arkansas Constitution, passed in November 2019, tasked the ARC with awarding casino gaming licenses, including one to a casino applicant for operation of a casino in Pope County, Arkansas. The ARC adopted rules pursuant to its authority in amendment 100 and Ark. Code Ann. § 23-117-101 (Repl. 2015), and established an application period that ran from May 1 through May 30, 2019. Five entities applied, including Gulfside, CNB, and appellee Choctaw Nation of Oklahoma ("Choctaw").[1] The ARC denied all five applications on June 12, 2019, for lack of requisite support from county officials. Gulfside appealed its denial, arguing its application included a valid letter of support as required by amendment 100. The circuit court agreed and remanded the matter to the ARC on March 24, 2020, to consider the merit of Gulfside's application. CNB appealed the circuit court's decision in favor of Gulfside to this court.

Meanwhile, on May 7, 2020, the ARC accepted Legends' application as an "amended application" of CNB for "good cause shown." The ARC then met to consider the applications of Gulfside and Legends on June 18, 2020, and awarded the license to Gulfside. Legends requested a hearing, challenging the ARC's decision to grant the license to Gulfside. Gulfside submitted a letter notifying the ARC of its challenge to Legends' status as a qualified applicant because it had "no gaming experience." The ARC held a hearing to consider these issues on June 30, 2020, and denied both Legends' and Gulfside's challenges. The ARC issued the license to Gulfside on July 31, 2020. Notwithstanding having been

---

[1]Legends was not one of the five applicants.

2

awarded the license, Gulfside then appealed the ARC's decision that Legends was a qualified applicant to the circuit court on March 9, 2021.

On October 21, 2021, this court decided *Cherokee Nation Businesses, LLC v. Gulfside Casino Partnership*, 2021 Ark. 183, 632 S.W.3d 284 (*CNB II*). We reversed the circuit court's decision, which found that Gulfside was a qualified applicant because amendment 100 requires a letter of support from the county judge in office at the time of the application period rather than from the prior county judge. As a result, the ARC met on November 12, 2021, voided the license to Gulfside, and awarded the license to both Legends and CNB.

Gulfside then amended its original circuit court petition on December 28, 2021, and added CNB as a party. It sought declaratory judgment that the actions by the ARC in awarding the license to Legends and CNB were unconstitutional and constituted an *ultra vires* act. It also alleged the ARC violated the Administrative Procedure Act.

The circuit court granted Gulfside's motion for summary judgment, finding in part that (1) both Gulfside and Choctaw had standing to bring the appeal of the ARC decision; (2) that CNB and Legends are two separate and distinct legal entities; (3) the ARC acted *ultra vires* in violation of amendment 100 when it issued the Pope County license to CNB because CNB had no pending application with the ARC and thus was not a "qualified applicant"; and (4) the casino license issued by the ARC jointly to CNB and Legends was an *ultra vires* action as it was issued unconstitutionally and in violation of the clear and unambiguous language of amendment 100, which specifically allows for a single applicant. Therefore, the circuit court held such license to be "a legal nullity, void and of no effect." The ARC, CNB, and Legends filed this appeal. Gulfside and Choctaw each filed responses.

3

## II. *Jurisdiction*

Appellants CNB, Legends, and the ARC appeal from the circuit court's order that granted appellee Gulfside's motion for summary judgment. The circuit court's grant of summary judgment was a final order. *See, e.g.*, *Harold Ives Trucking Co. v. Pro Transp., Inc.*, 341 Ark. 735, 737–38, 19 S.W.3d 600, 602–03 (2000); *see also* Ark. R. App. P. –Civ. 2(a)(1). Because this is an appeal from a final order and involves the interpretation of amendment 100 to the Arkansas Constitution, we have jurisdiction. Ark. Sup. Ct. R. 1-2(a)(1).

## III. *Statement of Issues*

This court has been asked to determine the following on appeal: (1) whether the circuit court and the appellate court have subject–matter jurisdiction; (2) whether Gulfside and Choctaw have standing to challenge the issuance of the Pope County casino license by the ARC; and (3) whether the ARC's decision to issue the license jointly to Legends and CNB was an *ultra vires* act and unconstitutionally issued in violation of amendment 100 to the Arkansas Constitution.

## IV. *Standard of Review*

The appeal arises from the circuit court's granting of Gulfside's motion for summary judgment. "Summary judgement may be granted only when there are no genuine issues of material fact to be litigated, and the moving party is entitled to judgment as a matter of law." *Cannady v. St. Vincent Infirmary Med. Ctr.*, 2012 Ark. 369, at 3, 423 S.W.3d 548, 550. "Ordinarily, upon reviewing a circuit court's decision on a summary judgment motion, we would examine the record to determine if genuine issues of material fact exist." *May v.*

4

*Akers-Lang*, 2012 Ark. 7, at 6, 386 S.W.3d 378, 382. In a case where both parties agree on the facts, we simply determine whether the appellee was entitled to a judgment as a matter of law. *Hobbs v. Jones*, 2012 Ark. 293, 412 S.W.3d 844. "When parties file cross-motions for summary judgment, as was done in this case, they essentially agree that there are no material facts remaining, and summary judgment is an appropriate means of resolving the case. As to issues of law presented, our review is de novo." *State v. Cassell*, 2013 Ark. 221, at 4–5, 427 S.W.3d 663, 666 (cleaned up).

The issues before us require interpretation of amendment 100. This court reviews a circuit court's interpretation of a constitutional provision de novo. *See City of Fayetteville v. Washington Cty.*, 369 Ark. 455, 255 S.W.3d 844 (2007). Language of a constitutional provision that is plain and unambiguous must be given its obvious and common meaning. *Id.* Neither rules of construction nor rules of interpretation may be used to defeat the clear and certain meaning of a constitutional provision. *Id.* Furthermore, when engaging in constitutional construction and interpretation, this court looks to the history of the constitutional provision. *See Foster v Jefferson Cty. Quorum Ct.*, 321 Ark. 105, 901 S.W.2d 809 (1995). The Arkansas Constitution must be considered as a whole, and every provision must be read in light of other provisions relating to the same subject matter. *Gatzke v. Weiss*, 375 Ark. 207, 210–11, 289 S.W.3d 455, 458 (2008).

## V. *Subject-Matter Jurisdiction*

As a fundamental matter, the court turns first to appellants' argument that the circuit court and the appellate court do not have subject-matter jurisdiction. "Subject-matter jurisdiction implicates a court's authority to hear and decide a particular type of case." *Osage*

*Creek Cultivation, LLC v. Ark. Dep't of Fin. & Admin.*, 2023 Ark. 47, at 6–7, 660 S.W.3d 843, 847 (citing *Ark. Dep't of Fin. & Admin. v. Naturalis Health, LLC,* 2018 Ark. 224, at 6, 549 S.W.3d 901, 906). A court's subject-matter jurisdiction comes from the Arkansas Constitution or constitutionally authorized statutes or court rules. *Id.* We review the pleadings to make a de novo determination whether a court has subject-matter jurisdiction. *Tripcony v. Ark. Sch. for the Deaf*, 2012 Ark. 188, at 4, 403 S.W.3d 559, 561.

Gulfside's complaint seeks relief under the Uniform Declaratory Judgments Act, Ark. Code Ann. §§ 16-111-101 et seq. (Repl. 2016 & Supp. 2023). We recently held that circuit courts have subject-matter jurisdiction for declaratory judgment claims when the complaint alleges the State has acted illegally, unconstitutionally, or *ultra vires. Osage Creek Cultivation,* 2023 Ark. 47, at 6–7, 660 S.W.3d at 847.[2]

Gulfside specifically pled that the ARC acted *ultra vires* and outside its constitutional authority in (1) issuing the Pope County casino gaming license to Legends, an entity with no casino gaming experience, despite the unambiguous gaming-experience requirements of amendment 100, section 4(m); and (2) licensing both CNB and Legends when section 4(k) of amendment 100 authorizes the licensing of "a casino applicant." The facts pled suffice to confer subject-matter jurisdiction on this court.

## VI. *Standing*

---

[2]Here, the ARC argues that sovereign immunity bars suit because the relief granted seeks to control the action of a state agency, but this runs against precedent. "A lawsuit against the State seeking declaratory relief may survive a sovereign-immunity challenge only if the complaint alleges that the State acted illegally, unconstitutionally, or *ultra vires.*" *Ark. Dep't of Fin. & Admin. v. 2600 Holdings, LLC,* 2022 Ark. 140, at 7, 646 S.W.3d 99, 103. Accordingly, sovereign immunity provides no basis for reversal.

The ARC, CNB, and Legends contend on appeal that Gulfside and Choctaw did not have standing to appeal the decision of the ARC to issue the license to Legends and CNB. This court has held that only a claimant with a personal stake in a controversy's outcome enjoys standing. *Chubb Lloyds Ins. Co. v. Miller Cty. Cir. Ct.*, 2010 Ark. 119, at 4, 361 S.W.3d 809, 812; *Pulaski Cty. v. Ark. Democrat-Gazette, Inc.*, 371 Ark. 217, 220, 264 S.W.3d 465, 467 (2007). "The question of standing is a matter of law for this court to decide, and this court reviews questions of law de novo." *Nelson v. Ark. Rural Med. Prac. Loan & Scholarship Bd.*, 2011 Ark. 491, at 11, 385 S.W.3d 762, 769. In *Nelson*, we stated:

> The Declaratory Judgment Statute is applicable only where there is a present actual controversy, and all interested persons are made parties, and only where justiciable issues are presented. It does not undertake to decide the legal effect of laws upon a state of facts which is future, contingent or uncertain. A declaratory judgment will not be granted unless the danger or dilemma of the plaintiff is present, not contingent on the happening of hypothetical future events; the prejudice to his position must be actual and genuine and not merely possible, speculative, contingent, or remote.

*Id.* at 12, 385 S.W.3d at 769 (quoting *Cummings v. Fayetteville*, 294 Ark. 151, 154–55, 741 S.W.2d 638, 639–40 (1987))

Again, appellants argue that appellees lack standing to challenge the ARC's decision to grant a license because neither was ever a "qualified applicant," having never gained the requisite support from Pope County. Their argument fails. Previously, we found that CNB had an interest in the prior lawsuit due to its status as an applicant for the casino license. *See Cherokee Nation Bus., LLC v. Gulfside Casino P'ship*, 2021 Ark. 17, 614 S.W.3d 811 (*CNB I*). The same holds true for Gulfside and Choctaw now. Although appellants argue that Gulfside and Choctaw are not qualified applicants because they lack the required letters of support, there is nothing in the record showing that either Gulfside or Choctaw is prohibited

7

from curing this deficiency once the application period is reopened. CNB was in the same position, yet we allowed it to pursue its action. Gulfside, at one time, held the casino license at issue. Although we reversed the ARC's grant to Gulfside, concluding that Gulfside's letter of support was inadequate, *see CNB II*, we cannot say the outcome of this litigation would not prejudice the appellees. The injury to Gulfside is plain. If CNB and Legends' joint license survives unchallenged, Gulfside will not have the license, nor will it have an opportunity to obtain it. Choctaw is in a similar position.

## VII. *Merits*

Gulfside filed a declaratory-judgment action claiming the ARC's actions were *ultra vires* under the Arkansas Constitution. Amendment 100, section 2(b) defines "casino applicant" as "any individual, corporation, partnership, association, trust, or other entity applying for *a* license to conduct casino gaming at a casino." (emphasis added.) "The Arkansas Racing Commission shall award *a* casino license to *a* casino applicant for a casino to be located in Pope County within two miles of the city limits of the county seat." Ark. Const. amend. 100, § 4(k) (emphasis added).

Similar to our analysis in *CNB II*, we must look at the plain language of the amendment. The ARC issued the Pope County casino license to both Legends and CNB. Yet at the time of this issuance, CNB had no application pending with the ARC. As stated, five applications were submitted during the May 2019 application period, but all five were rejected for failure to meet the requirements of amendment 100. Since then, the ARC did

8

not reopen another application period during which it considered new applications.[3] As CNB's only application before the ARC was submitted in May 2019 and was ultimately rejected, it was not a "qualified applicant" as required by amendment 100. So, the ARC acted *ultra vires* in issuing the license to CNB. We affirm the circuit court's decision on this point.

Further, the language of the amendment is, again, unambiguous. It provides for *one* license to be awarded to *one* entity for *one* casino. "Casino applicant" is singular—not plural. Nowhere in the text does it allow for joint or dual licensing to more than one applicant. The circuit court was correct in finding that the award of the Pope County casino license to both Legends and CNB violated amendment 100, making such action *ultra vires*.

Because of these constitutional infirmities, the circuit court's order declaring that the license issued is void is affirmed.[4]

Affirmed.

Special Justice BRYAN MCKINNEY joins.

BAKER and WOMACK, JJ., dissent.

KEMP, C.J., not participating.

**KAREN R. BAKER, Justice, dissenting.** I disagree with the majority's decision to affirm the circuit court's order, and I write separately to point out that the majority's position

[3]The ARC issued public notice that a second application period would open, but on January 10, 2020, elected to abandon this period and not consider any applications submitted during that time, including CNB's.

[4]As we have affirmed the order voiding the license, we need not further address the APA claim under Ark. Code Ann. § 25-15-212.

9

on sovereign immunity conflicts with the broad language of *Board of Trustees of University of Arkansas v. Andrews*, 2018 Ark. 12, 535 S.W.3d 616.  In the present case, the majority states:

> [2]Here, the ARC argues that sovereign immunity bars suit because the relief granted seeks to control the action of the state agency, but this runs against precedent.  "A lawsuit against the State seeking declaratory relief may survive a sovereign-immunity challenge only if the complaint alleges that the State acted illegally, unconstitutionally, or *ultra vires*."  *Ark. Dep't of Fin. & Admin. v. 2600 Holdings, LLC*, 2022 Ark. 140, at 7, 646 S.W.3d 99, 103.  Accordingly, sovereign immunity provides no basis for reversal.

However, as I explained in my dissent in *Arkansas Oil & Gas Commission v. Hurd*, 2018 Ark. 397, at 18–19, 564 S.W.3d 248, 258–59,

> In *Andrews*, the court held that "never means never," therefore . . . suit is barred based on the broad language in *Andrews* . . . because *Andrews* did not identify exceptions, exemptions or the like. Again, the State may never be sued[.]

This appeal stems from the circuit court's order declaring the casino license at issue a "legal nullity, void and of no effect" as a result of the ARC's ultra vires action of issuing the license in violation of amendment 100.  A review of whether the ARC acted ultra vires and outside its constitutional authority constitutes a review of State action.  As I stated in my dissent in *Arkansas Department of Finance & Administration v. Carpenter Farms Medical Group, LLC*, 2020 Ark. 213, at 17, 601 S.W.3d 111, 122 (Baker, J., concurring in part and dissenting in part), because State conduct is at issue, *Andrews* bars suit.

Accordingly, I dissent from the result reached by the majority and would reverse and dismiss this appeal based on sovereign immunity.

**SHAWN A. WOMACK, Justice, dissenting.** Article 5, section 20 of the Arkansas Constitution requires this court to reverse and dismiss this case.[1] Without an express constitutional provision to the contrary, the State can never properly be a defendant in any of its courts.[2] The circuit court was simply without jurisdiction to consider Gulfside's lawsuit because article 5, section 20 affords the State immunity from suit in most instances, and none of the limited, constitutionally based exceptions were present here.[3] The same is true for this court. For these reasons, I would reverse and dismiss the case.

I respectfully dissent.

*McDaniel Wolff, PLLC*, by: *Bart W. Calhoun*, *Scott P. Richardson*, and *Dustin B. McDaniel*, for appellants Cherokee Nation Businesses, LLC; and Legends Resort & Casino, LLC.

*Tim Griffin*, Att'y Gen., by: *Noah P. Watson*, Sr. Ass't Att'y Gen.; and *Carl F. "Trey" Cooper III*, for appellee Arkansas Racing Commission.

*Castleberry Law Firm, PLLC*, by: *Kenneth P. "Casey" Castleberry*; and *Dodds, Kidd, Ryan & Rowan*, by: *Lucas Z. Rowan*, for appellee Gulfside Casino Partnership.

*Appellate Solutions, PLLC, d/b/a Riordan Law Firm*, by: *Deborah Truby Riordan*; and *The Edwards Firm, P.L.L.C.*, by; *Robert H. Edwards*, for appellee Choctaw Nation of Oklahoma.

---

[1] *See Thurston v. League of Women Voters of Ark.*, 2022 Ark. 32, at 17, 639 S.W.3d 319, 327 (Womack, J., dissenting).

[2] *Id.*

[3] *Id.* at 17, 639 S.W.3d at 327.

11